UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

STEVEN ERIC SWITZER,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

Defendant.

No. 2:17-cv-01019 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. ECF Nos. 6 and 8. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born November 23, 1963, applied on October 4, 2013 for SSI, alleging disability beginning January 25, 2011. Administrative Transcript ("AT") 154-155. Plaintiff later amended the onset date to October 2, 2013. AT 12. Plaintiff alleged he was unable to work due to lower back pain that radiates down the left leg. AT 88, 2017. In a decision dated September 21, 2015,

the ALJ determined that plaintiff was not disabled.[1]  AT 12-25.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2014.
>
> 2. The claimant did not engage has in substantial gainful activity during the period from the alleged onset date of October 2, 2013 through his date last insured of December 31, 2014.
>
> 3. Through the date last insured, the claimant had the following severe impairment: disorder of the spine (lower back pain).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work, except he can carry, at a maximum, up to 30 pounds, up to 20 pounds occasionally, and up to 10 pounds frequently; he can stand/walk no more than 6 hours in an 8 hour workday, and can sit for less than 8 hours in an 8 hour workday; pushing/pulling is limited to no more than 20 pounds occasionally, and 10 pounds frequently; climbing ramps and stairs, balancing, stooping, kneeling, crouching, crawling and twisting can be performed occasionally; reaching, handling, fingering, feeling, seeing and hearing, speaking can be done frequently; the claimant should avoid concentrated exposure to hazards, to include heights, machinery, extreme temperatures, fumes, and humidity.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work.
>
> 7. The claimant was born on November 23, 1963, and was 51 years old, which is defined as a younger individual age 18-49, on the date last insured. The claimant subsequently changed age category to closely approaching advanced age.
>
> 8. The claimant has at least a high-school education and is able to communicate in English.
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills.
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

AT 12-24.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ failed to properly evaluate and find that plaintiff suffered from the severe impairment of obesity at Step Two; (2) the ALJ failed to properly credit Dr. Shin's treating opinion; and (3) the ALJ erred in finding that plaintiff was not a credible witness.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial

evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

A. Treating Opinion

Plaintiff asserts that the ALJ erred in failing to properly credit Dr. Shin's treating opinion of May 2014, instead crediting earlier findings by Dr. Shin that indicated a higher functional capacity.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

////

4

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

In January 2011, plaintiff had a job maintaining forklifts and other equipment at a food warehouse facility. AT 35-36. That month, he was injured in a workplace accident and began experiencing pain on the left side of his lower back with radiating symptoms down his left leg, neck pain, and trouble sleeping due to back pain. AT 419.

In June 2011, plaintiff began treatment with Dr. Carl Shin, who issued regular reports before finding plaintiff to have reached "permanent and stationary" status in July 2013.[2] AT 358-364. As to functional capacity, Dr. Shin opined that, in an eight-hour workday, plaintiff could stand/walk less than six hours, sit less than eight hours, and push/pull to a limited degree. AT 363. Dr. Shin noted that plaintiff has "adequate physical therapy" and was "fairly stable," with a

---

[2] "Permanent and stationary" is a term of art indicating that plaintiff's medical condition had "reached maximum medical improvement," after which a doctor "can assess how much, if any permanent disability resulted from your work injury." DWC glossary of workers' compensation terms for injured workers, retrieved from https://www.dir.ca.gov/DWC/WCGlossary.htm#p on June 14, 2018.

5

"near full range of motion in the lumbar spine" and "inspection . . . within normal limits other than his morbid obesity." AT 360. The ALJ afforded the July 2013 opinion significant weight, noting that Dr. Shin "treated the claimant regularly, and therefore had the opportunity to observe the impact of the claimant's symptoms on his functioning." AT 21. "[C]onsistent with the overall record," the ALJ found, the July 2013 assessment "limited the claimant to the equivalent of a light exertional level with additional postural and environmental limitations" as reflected in the RFC. AT 21.

Ten months later, in May 2014, Dr. Shin filled out a Residual Functional Capacity Questionnaire for plaintiff, summarized by the ALJ as follows:

> He noted that the claimant could sit up to two hours and stand/walk for up to two hours in an eight-hour workday. He would need to be able to walk for five minutes every 45 minutes, be able to shift positions at will, and take two to three unscheduled five-minute breaks in a workday. He could lift up to ten pounds, rarely twist or stoop, occasionally climb stairs, and never crouch/squat or climb ladders. Further, he noted that the claimant would likely be absent from work about three days per month as a result of his impairment.

AT 21; see AT 445-448. The ALJ afforded "less weight" to this evaluation, "which indicated that the claimant would be limited to a less than sedentary exertional level." AT 22. The ALJ continued:

> Dr. Shin's own clinical records do not support this level of limitation. Treatment notes do not indicate any significant change in the claimant's treatment regimen since his last assessment. Additionally, the claimant reported that he was largely managing the household and taking care of his wife after she underwent surgery in November 2013, and Dr. Shin noted that he felt the claimant was managing well. Further, as recently as his March 2014 evaluation, the claimant reported that he was using his elliptical machine three times a day and walking three times a day for exercise.

AT 22.

Plaintiff argues that, unlike the July 2013 report, the May 2014 report was completed after plaintiff's alleged disability onset date of October 2, 2013. He asserts that the May 2014 limitation of "no lifting over 10 pounds" was consistent with Dr. Shin's 2013 findings. Plaintiff further points out that his exercise regime in 2013 and 2014 was limited and varied from week to week.

6

However, the court has reviewed plaintiff's medical records between July 2013 and May 2014 and finds them consistent with the ALJ's summary. In September 2013, Dr. Shin found "no significant changes" to objective findings and noted that plaintiff was "doing more . . . pushing himself more with activity and exercise." AT 356. Medications were "significantly helpful." AT 356. In November 2013, Dr. Shin noted that plaintiff was helping around the house and taking care of his wife after her surgery; his pain on medication was a 2/10 or 3/10; and he was exercising for 40 minutes daily on an elliptical machine. AT 349. Dr. Shin noted he was "doing well" and "encouraged him to continue to stay active and keep his spirits up." AT 349.

In January 2014, Dr. Shin noted "significant decreased range of motion at the waist" and "tenderness throughout his left side lumbar paraspinal muscles." AT 443. Plaintiff's reported pain level on medication was 4/10 or 5/10, and he was "using his elliptical machine for exercise." AT 443. In March 2014, Dr. Shin found that plaintiff had "increased pain with range of motion" but his pain remained a 2/10 or 3/10 with Percocet. AT 441. Plaintiff used home exercise machines three times a day and walked "about 15 minutes 3 times a day." AT 441. The ALJ also gave "great weight" to the March 2014 opinion of State agency medical consultant Dr. H. Pham, who concluded that plaintiff could work at a light exertional level with limitations for postural and hazards. AT 23; see AT 82-83.

Based on this record, the undersigned concludes that the ALJ provided specific and legitimate reasons to discount Dr. Shin's May 2014 opinion, supported by substantial evidence. See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) ("[I]f the evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld.").

B. Obesity

Plaintiff asserts that the ALJ erred in finding that plaintiff did not suffer from the severe impairment of morbid obesity at Step Two of the evaluation process.

At Step Two, the ALJ found plaintiff to have the severe impairment of lower back pain. AT 14. The ALJ found plaintiff to have multiple non-severe impairments, "including sleep apnea, neck strain, left ankle strain and obesity." AT 14. As to obesity, the ALJ stated:

> The record reflects that the claimant's weight has been above obese

>             levels since the amended onset date. Treatment notes indicate that
>             the claimant is six feet tall, that his weight ranged between 335 and
>             397 pounds, with body mass index readings between the mid-40s and
>             mid-50s [record citations omitted]. Therefore, in accordance with
>             SSR 02-1p, the undersigned considered the claimant's obesity at all
>             steps of the sequential evaluation process. However, the evidence
>             does not suggest the claimant's obesity caused significant limitations
>             or exacerbated his severe impairments.

AT 15.

Obesity was eliminated from the Listing of Impairments (Listing 9.09) because the Social Security Administration determined that the criteria in the Obesity Listing did "not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." Social Security Ruling (SSR) 02-01p (2002). Obesity remains, however, a factor that may be considered at any step in the sequential evaluation. See id. The ruling further provides:

> [W]e will not make assumptions about the severity or functional
> effects of obesity combined with other impairments. Obesity in
> combination with another impairment may or may not increase the
> severity or functional limitations of the other impairment. We will
> evaluate each case based on the information in the case record.

Id.

Plaintiff argues that his "extreme obesity exacerbated his pain and contributed to his depression and functional limitations." (ECF No. 21 at 13.) Plaintiff was 6 feet tall and at the time of the hearing weighed 377 pounds (AT 55); at his heaviest in July 2014, he weighed over 400 pounds. AT 638. Plaintiff notes that the "record was replete with references to Mr. Switzer's morbid obesity, need to lose weight, and efforts to lose weight." (ECF No. 21 at 12.) See, e.g., AT 540, 551, 559, 560, 638, 639, 697. In July 2014, plaintiff reported that he was depressed about his weight gain, worried about possibly developing diabetes, and short of breath when climbing stairs due to his weight. AT 638-639. By September 2014, he had lost 25 pounds, was "dieting and walking for exercise" and "states he can walk about 20 minutes before he has to stop" due to back pain. AT 551.

In the July 2013 "permanent and stationary" report credited by the ALJ, Dr. Shin noted

that plaintiff was able to use the weed eater, take out the trash, clean and vacuum the house, shop, sleep "fairly well," and take walks in the neighborhood park with his wife "a couple times a day." AT 359. Dr. Shin further noted that plaintiff exhibited "a near full range of motion of the lumbar spine" and, despite some discomfort, was "getting through range of motion fairly good." AT 360. "Inspection is within normal limits other than his morbid obesity." AT 360. As plaintiff has not shown that his obesity caused or contributed to functional impairments beyond the limitations set forth in the RFC, the court finds no error on this basis.

    C.   Credibility

Plaintiff asserts that the ALJ erred by rejecting plaintiff's "statements as to the nature and extent of his functional limitations, even though there was objective medical evidence of underlying impairments which could reasonably be expected to produce those symptoms and no evidence of malingering." (ECF No. 21 at 16.)

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

Here, the ALJ wrote that "[t]he objective record and the reported level of claimant's daily activities are generally inconsistent with his allegations of incapacitating symptoms." AT 19. The ALJ continued:

> The claimant indicated that he was unable to sit for a long period of time, but noted that he was able to drive for up to two hours at a time (6E). He indicated that he spent approximately half his day in his recliner, but also testified that he helped take care of his disabled wife and son, and that he worked for his father's business 10 to 12 hours a week. He also indicated that he was able to grocery shop for up to an hour before his back started hurting (6E). Further, treatment records reflect that the claimant was able to maintain a certain level of pain relief with medication such that he was able to walk and use an elliptical machine for exercise, as well as perform household chores, such as cooking, cleaning, and laundry (5F/1, 7F/3-4, 11F/34-35). In fact, as recently as February 2015, the claimant reported being able to successfully travel from California to Virginia to visit family (11F/25).
>
> Accordingly, the overall medical record is not entirely consistent with the claimant's allegations. The record does not contain objective findings that reflect the level of impairment alleged.

AT 19.

In his motion, plaintiff asserts that his daily activities were limited due to his physical

impairments. In the 2013 disability questionnaire cited by the ALJ (6E), plaintiff also stated that he could only drive for two hours at a time and had difficulty doing household chores after 15 or 20 minutes due to back pain. AT 215-217. However, the overall record (including the 2013 questionnaire) indicate that plaintiff could walk, exercise, care for others, and do household chores to some extent. See, e.g., AT 359 (July 2013 note that plaintiff could use the weed eater, take out the trash, clean, vacuum, shop, and drive); AT 551 (September 2014 medical note that plaintiff "is able to walk for exercise" and "carry out ADLs such as cooking, cleaning, laundering, and self-hygiene").

At the 2015 hearing, plaintiff testified that, since 2011, he had worked for his father's electric motoring repair business, answering the phone and ordering parts, in exchange for his father paying his rent and some of his bills. AT 38-39. Plaintiff worked in this role for 10-12 hours a week out of his home, most of the time sitting in a recliner with his feet up on an ice pack. AT 40-43, 55. February 2015 medical notes indicate that he "continues to do well on the current medication regimen" for ongoing neck, back, and ankle pain, and that he went "to Virginia to visit family . . . and medications allowed him to do so with minimal pain." AT 542. See Warre v. Comm'r, 439 F.3d 1001, 1006, (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

At the hearing, the ALJ asked plaintiff what prevented him from doing "less strenuous work" than in the past, and he responded in part: "I don't know what I can do. I can't sit for very long. I can't stand for very long." AT 45. He further testified that, over the past few years, his back pain had worsened when bending and twisting: "It's to the point where it hurts a lot more now." AT 56; see also AT 57 (after a branch block, pain returned and "then it eventually just kept getting worse"). Here, the ALJ provided clear and convincing reasons for discounting plaintiff's subjective complaints, supported by evidence that his pain was fairly well-controlled on medication and that he was able to engage in a variety of daily activities, sit for extended periods of time, work out of his home, and travel. The court finds no grounds for relief on this basis.

////

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 21) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 23) is granted; and

3. Judgment is entered for the Commissioner.

Dated:  June 15, 2018

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/switzer1019.ssi.ckd